```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
 ALPHA CAPITAL ANSTALT,                  :
                                         :
                           Plaintiff,    :        19cv9270 (DLC)
                                         :
                -v-                      :        OPINION AND ORDER
                                         :
 INTELLIPHARMACEUTICS INTERNATIONAL      :
 INC., ISA ODIDI, AMINA ODIDI, and       :
 ANDREW PATIENT,                         :
                                         :
                           Defendants.   :
                                         :
----------------------------------------X
```

APPEARANCES

For plaintiff:
David Scott Hoffner
Hoffner PLLC
800 Third Avenue, 13th Floor
New York, NY 10022

For defendants:
Steven Sanford Fitzgerald
Amy Albanese
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, NY 10110

DENISE COTE, District Judge:

Defendants Intellipharmaceutics International Inc. ("IPCI" or the "Company"), Isa Odidi, Amina Odidi, and Andrew Patient ("Patient") (collectively, the "Defendants") have moved to dismiss the complaint in this securities action pursuant to Rule 12(b)(6), Fed. R. Civ. P. For the following reasons, the motion is largely denied.

## **Background**

IPCI is a Toronto-based pharmaceutical company specializing in the research, development, and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs.  IPCI is publicly traded on the NASDAQ and Toronto stock markets.  During the events relevant to this litigation, Isa Odidi was IPCI's Chief Executive Officer ("CEO"), Co-Chief Scientific Officer, and Chairman of the Company's Board of Directors.  Amina Odidi was IPCI's President, Chief Operating Officer ("COO"), Co-Chief Scientific Officer, and a member of the Company's Board of Directors.  Patient was IPCI's Chief Financial Officer ("CFO") and a member of the Company's Board of Directors until his resignation, which was publicly announced on November 6, 2018, and became effective on November 30, 2018.  It is IPCI's alleged failure to timely advise investors of Patient's departure that is at the heart of this lawsuit.

On September 20, 2018, IPCI filed a registration statement and prospectus (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in preparation for a stock offering.  The Registration Statement was amended in subsequent weeks and the final version was filed on October 11, 2018 and declared effective on October 12.  In their capacity as senior management and members of IPCI's board of directors, Isa

Odidi, Amina Odidi, and Patient each signed the Registration Statement.  As part of the offering, IPCI sold 2,775,231 shares of its common stock, pre-funded warrants exercisable for 16,563,335 common shares, and warrants exercisable for 20,000,000 common shares.

IPCI's underwriter solicited Alpha Capital Anstalt ("Alpha") on October 1, 2018 for an investment in IPCI's offering.  During its due diligence, Alpha arranged to meet with Isa Odidi and Patient on October 9, 2018 (the "October 9 meeting").  Only Patient attended the October 9 meeting on behalf of IPCI.  On October 12, 2018, Alpha purchased IPCI securities for approximately $1,677,333.00.

On November 6, 2018, approximately three weeks after the offering closed, the Company announced that Patient would be resigning as CFO effective November 30.  That same day, it filed Form 6-K to disclose the departure.  On November 30, Isa Odidi acknowledged in a conversation with Alpha's service provider that IPCI knew by the date of the offering that Patient would resign by the end of 2018.

Alpha brought this lawsuit on October 7, 2019.  The complaint asserts claims against all of the Defendants under Section 11 of the Securities Act of 1933 (the "Securities Act"); against IPCI, Isa Odidi, and Patient under Section 12(a)(2) of

the Securities Act; and against the three individual defendants as control persons under Section 15 of the Securities Act.  15 U.S.C. §§ 77k, 77l(a)(2) and 77o.  Alpha seeks damages and rescission of its purchase of IPCI securities.

The Defendants moved to dismiss the complaint on December 12, 2019.  The motion was fully submitted on March 6, 2020.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Geffner v. Coca-Cola Co., 928 F.3d 198, 199 (2d Cir. 2019) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Empire Merchants, LLC v. Reliable Churchill LLP, 902 F.3d 132, 139 (2d Cir. 2018) (citation omitted).  The plaintiff must plead enough facts to "nudge[] [its] claims across the line from conceivable to plausible."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

4

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor."  Coalition for Competitive Electricity, Dynergy Inc. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018) (citation omitted).  "A complaint is . . . deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."  Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation omitted).

I.  Section 11 Liability

Alpha maintains that the omission of information concerning Patient's imminent departure made the Registration Statement materially misleading.  Section 11 of the Securities Act imposes liability on an issuer of a registration statement in three circumstances:

> if (1) the statement "contained an untrue statement of a material fact," (2) the statement "omitted to state a material fact required to be stated therein," or (3) the omitted information was "necessary to make the statements therein not misleading."

Stadnick v Vivint Solar, Inc., 861 F.3d 31, 36 (2d Cir. 2017) (quoting 15 U.S.C. § 77(k)).  Unlike securities fraud claims

brought pursuant to Section 10(b) of the Securities Exchange Act of 1934, plaintiffs bringing Section 11 claims "need not allege scienter, reliance, or loss causation." In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir. 2010).

"[W]hether a statement is misleading depends on the perspective of a reasonable investor: The inquiry (like the one into materiality) is objective." Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175, 186–87 (2015) (citation omitted). The determination of materiality "is an objective, totality-of-the circumstances inquiry." Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc., 873 F.3d 85, 146 (2d Cir. 2017) (hereinafter FHFA). "A material fact is one that assumes actual significance for a reasonable investor deciding whether to purchase the security at issue, but it need not be outcome-determinative." Id. (citation omitted). A statement or omission is "material" if a "reasonable investor would view it as significantly altering the total mix of information made available." Id. (citation omitted).

In considering whether a statement or omission is materially misleading, disclosures and representations must be "taken together and in context." In re ProShares Trust Sec. Litig., 728 F.3d 96, 103 (2d Cir. 2013) (citation omitted).

"That context includes, for example, all facts related to the statement or omission, its surrounding text, the offering documents, the securities, the structure of the transaction, and the market in which the transaction occurs." FHFA, 873 F.3d at 151.  Materiality is essentially a "mixed question of law and fact," IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009), and as such, it is not ordinarily a question appropriate for resolution as a matter of law in a motion to dismiss.  The Second Circuit has repeatedly held that

> a complaint may not properly be dismissed on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.

Id. (citation omitted).

Nevertheless, pursuant to the "bespeaks caution" doctrine, "when a registration statement warns of the exact risk that later materialized, a [S]ection 11 claim will not lie as a matter of law." In re ProShares, 728 F.3d at 102 (citation omitted).  There are, however, important limitations to the bespeaks caution doctrine.  First, to gain protection under the doctrine, the cautionary language contained with the disclosure must, when examined in context, "warn[] of the specific contingency that lies at the heart of the alleged

misrepresentation." P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 97 (2d Cir. 2004); see also Hunt v. Alliance N. Am. Gov't Income Trust, Inc., 159 F.3d 723, 729 (2d Cir. 1998). Second, "[c]autionary words about future risk cannot insulate from liability the failure to disclose that the risk has [already] transpired." Meyer v. Jinkosolar Holdings Co., 761 F.3d 245, 251 (2d Cir. 2014) (citation omitted). Third, the bespeaks caution doctrine extends only to forward-looking statements, not to "misrepresentation[s] of present or historical facts." P. Stolz, 355 F.3d at 96-97.

The gravamen of Alpha's Section 11 claim is that IPCI's failure to disclose the fact that Patient would be leaving the company in approximately two months rendered the following portions of the Registration Statement materially misleading:

- A list of Alpha's management that described Patient as having "served as the Chief Financial Officer of the company since September 2017."

- The "Employment Agreements" section of the Registration Statement, which said: "The Employment Agreement with Andrew Patient, the Chief Financial Officer of the Company, dated August 30, 2017 . . . entitles Mr. Patient to receive a base salary of C$300,000 per year . . . [and] provides for automatic renewal on December 31 each year . . . ."

- A section of the Registration Statement describing risk factors associated with the offering, which stated that the "success of [IPCI's] business depends, in large part, on [its] continued ability to attract and retain highly qualified management."

The complaint adequately pleads that IPCI's Registration Statement contained a material omission when it failed to indicate that Patient was departing within a few weeks of the offering.  Taken as a whole, the Registration Statement suggests that Patient would continue as a member of IPCI's senior management, a fact that the complaint alleges the Company knew to be false.

Defendants offer several arguments in support of their motion to dismiss.  First, they maintain that they were not aware that Patient would be leaving the Company.  This factual dispute with the complaint's allegations cannot be resolved on a motion to dismiss.  The complaint asserts that Isa Odidi admitted that the Company knew as of the date of the offering that Patient would be leaving soon.

Second, the Defendants argue that they had no duty to disclose Patient's departure.  The complaint adequately pleads, however, that once IPCI spoke about Patient's significance to the Company, the Company was obligated to disclose his planned

9

departure.  It adequately asserts that such a disclosure was necessary to avoid rendering the statements about Patient in the Registration Statement misleading.  In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d at 365.

Third, the Defendants argue that even if the omission made the statements about Patient misleading, the omission was not material.  They argue that Patient was not performing functions integral to the Company, he had only held his position for a year, and no analyst expressed concern that his loss would negatively impact IPCI.  Defendants invite examination of the trading activity immediately after Patient's departure as evidence that the market did not view his resignation as material.  The information about Patient's departure was not so obviously unimportant, however, that a decision about its materiality may be made on a motion to dismiss.

The Defendants also rely on the bespeaks caution doctrine.  The Registration Statement warned that "each of [IPCI's] employees may terminate his or her employment at any time."  This cautionary language did not, as a matter of law, warn investors that the risk of Patient's departure had already materialized by the time of the offering.  Accordingly, the motion to dismiss the Section 11 claim is denied.

II.  Section 12(a)(2) Liability

IPCI, Isi Odidi, and Patient move for dismissal of the claim brought pursuant to Section 12(a)(2) of the Securities Act.  In addition to the arguments just addressed, they argue that they were not statutory sellers of the IPCI securities.

"Section 12(a)(2) provides similar redress [to Section 11] where the securities at issue were sold using prospectuses or oral communications that contain material misstatements or omissions."  In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d at 359.  While Section 11 "is expressly limited to specific offering participants, the list of potential defendants in a [S]ection 12(a)(2) case is governed by a judicial interpretation of [S]ection 12 known as the statutory seller requirement."  Id.

> An individual is a 'statutory seller' -- and therefore a potential [S]ection 12(a)(2) defendant -- if he: (1) passed title, or other interest in the security, to the buyer for value, or (2) successfully solicited the purchase of a security, motivated at least in part by a desire to serve his own financial interests or those of the securities' owner.

Id. (quoting Pinter v. Dahl, 486 U.S. 622, 647 (1988)).

The Second Circuit has yet to define the activities that constitute successful solicitation, but it has advised that an individual must have done more than engage in activities that were preliminary to the offering.  It has ruled that, "[w]hile there is no doubt that [defendant] played a major role in

11

setting up the [deal], that is not sufficient to cast [it] as a seller.  Instead, plaintiffs must show that [defendant] actually solicited their investment . . . ."  Capri v. Murphy, 856 F.2d 473, 478-79 (2d Cir. 1988).  This Court has held that an allegation that an individual participated in a "road show" to sell the securities is sufficient to plead that a defendant is a statutory seller, see In re WorldCom, Inc. Secs. Litig., 294 F. Supp. 2d 392, 423 (S.D.N.Y. 2003), but that allegations that a defendant participated in preparation of a registration statement are not.  Fed. Hous. Fin. Agency v. Stanley, No. 11 CIV. 6739 DLC, 2012 WL 5868300, at *4 (S.D.N.Y. Nov. 19, 2012).  See also Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc., 422 F. Supp. 3d 821, 857 (S.D.N.Y. 2019) (participation in road shows sufficient); City of Westland Police & Fire Ret. Sys. v. MetLife, Inc., 928 F. Supp. 2d 705, 720 (S.D.N.Y. 2013)(signing registration statement insufficient); Citiline Holdings, Inc. v. iStar Fin. Inc., 701 F. Supp. 2d 506, 512 (S.D.N.Y. 2010) (same).

    Isa Odidi's motion is granted.  As set forth in the complaint, his participation in the solicitation of the offering was limited to signing the Registration Statement.  The complaint does not allege that he engaged in any marketing activities with Alpha or any other purchaser or "successfully

solicited the purchase of a security." In opposition to this motion, Alpha argues that Isa Odidi's scheduled participation in the October 9 meeting with Alpha suggests that he was an active solicitor of ICPI's offering. Absent allegations that Isa Odidi actually engaged in the marketing of IPCI's stock, his scheduled participation to do so is insufficient to plead the Section 12(a)(2) claim.

The remainder of the motion to dismiss the Section 12(a)(2) claim is denied. Patient not only attended the October 9 meeting, but was Alpha's point of contact at IPCI. Patient argues that he was not a statutory seller because his participation did not "serve his own financial interests or those of the securities' owner." This argument is unavailing. Patient participated in the sale to Alpha as an officer of IPCI, the owner of the securities.

As for IPCI, it solicited the sale of its own securities. Relying on Pinter, 486 U.S. 622, IPCI argues that it is shielded from liability because it acted through an underwriter. Pursuant to its agreement with IPCI, the underwriter purchased all of the IPCI securities offered pursuant to the Registration Statement and sold them to the public. IPCI argues that it may not be held liable as a statutory seller unless it "directly solicited the plaintiff's purchase of securities."

This argument fails.  SEC Rule 159A provides that "in a primary offering of securities," an issuer is a statutory seller for the purposes of Section 12(a)(2) "regardless of the underwriting method used to sell the issuer's securities."  17 C.F.R. § 230.159A.  See FHFA, 873 F.3d at 139.  Moreover, the complaint alleges that IPCI participated directly in the solicitation of its securities when it sent one of its officers to facilitate Alpha's due diligence and directed Alpha to contact its CFO for further due diligence materials.

III. Section 15 Control Person Liability

The Defendants move to dismiss the claims brought pursuant to Section 15 of the Securities Act against Isa Odidi, Amina Odidi, and Patient.  Section 15 provides that "[e]very person who . . . controls any person liable under [S]ection 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person."  15 U.S.C. § 77o.

The motion to dismiss the Section 15 claims is denied.  The individual defendants do not dispute that the complaint adequately pleads that they exercised control over persons who allegedly engaged in primary violations of the Securities Act.  Their arguments that the complaint fails to plausibly allege a primary violation and that the Section 15 claims are duplicative of the Sections 11 and 12(a)(2) claims are rejected.

## **Conclusion**

Defendants' December 12 motion is largely denied. The claim against Isa Odidi pursuant to Section 12(a)(2) of the Securities Act is dismissed.

Dated:    New York, New York
         June 18, 2020

```
                             _____
                                   DENISE COTE
                             United States District Judge
```